UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RAHSHEEM MOSS,

                         Petitioner,

        -against-

PEOPLE OF THE STATE OF NEW YORK,

                      Respondent.
-----------------------------------------------------------X

**OPINION AND ORDER**
10-CV-5840 (SJF)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   FEB 12 2014   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

## I.    Introduction

On January 31, 2008, a judgment of conviction was entered against Rahsheem Moss ("petitioner") in the Supreme Court of the State of New York, Nassau County (Honorof, J.) upon a jury finding him guilty of robbery in the second degree (N.Y. Penal Law § 160.10(2)(a)) and robbery in the third degree (N.Y. Penal Law § 160.05). On December 10, 2010, petitioner, proceeding *pro se*, filed a petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") and the appointment of *pro bono* counsel to represent him in this case. [Docket Entry No. 1]. For the reasons set forth below, the Petition and the application for appointment of *pro bono* counsel are denied.

## II.    Factual Background

### A.    Pre-Trial Proceedings

#### 1.    Evaluation of Petitioner's Competency to Stand Trial

Petitioner was arrested on April 24, 2007 in connection with the forcible robbery of Monet Jensen. (Affidavit of Assistant District Attorney Joanna Hershey, at ¶ 5 [Docket Entry

No. 9]).[1]  In July 2007, pursuant to section 730.20 of the New York State Criminal Procedure Law, petitioner was evaluated by a court-appointed psychiatrist and a court-appointed psychologist to evaluate petitioner's competency to stand trial. (*Id.* at ¶ 6).  Both examiners determined that petitioner was incapacitated and not fit to proceed to trial. (*Id.*).  On August 9, 2007, petitioner was admitted to Mid-Hudson Forensic Psychiatric Center ("Mid-Hudson") for temporary observation. (*Id.*).  On August 20, 2007, a clinical director at Mid-Hudson evaluated petitioner and concluded that he was no longer incapacitated and that he was fit to proceed to trial. (*Id.*).  On August 29, 2007, petitioner was indicted under Nassau County indictment number 2033N-07. (Petitioner's Appellate Division Brief, at 6 [Docket Entry No. 9-6]).  On October 4, 2007, petitioner was arraigned on the indictment. (*Id.* at 6 n.1).

2. Pretrial *Wade* Hearing[2]

On November 9, 2007, the trial court held a pretrial hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) on petitioner's motion to suppress the show-up identification of petitioner (the "*Wade* hearing").  The only witness to testify at the *Wade* hearing was Hempstead Village police officer Americo Masi ("Officer Masi"), who responded to the scene after receiving a call that a robbery had taken place. (H. 12-15).  Officer Masi testified that he spoke with the victim and relayed her description of the assailant to other officers via radio transmission. (*Id.* at 15-17).  Officer Masi then heard a radio transmission indicating that a suspect matching the description was detained nearby, and he drove the victim and her young child to that location. (*Id.* at 17-20).  Officer Masi testified that as he pulled up to

---

[1]     The affidavit of Assistant District Attorney Joanna Hershey is hereinafter referred to as "Hershey Aff."

[2]     Testimony from the pretrial hearing held before the Hon. David J. Ayres, Acting Supreme Court Justice, Supreme Court, Nassau County: Criminal Term Part 46, is summarized here only insofar as it is relevant to the petition.  "H" refers to the transcript of that proceeding.

the detained individual, the victim said "'it's definitely him, definitely the same guy that robbed me, same guy that pushed down my child.'" (*Id.* at 22). The court concluded the show-up identification procedure was not unduly suggestive and denied petitioner's motion to suppress. (*Id.* at 54-56).

B.    Trial[2]

On January 28, 2008, petitioner's trial commenced. During the four (4) day trial, the prosecution presented six (6) witnesses, including: (1) complainant Monet Jensen ("Jensen"); (2) Hempstead Village police sergeant Francis McNamee ("Sgt. McNamee"); (3) Hempstead Village police officer James Murphy ("Officer Murphy"); (4) Hempstead Village police officer Mark Kirichenko ("Officer Kirichenko"); (5) Officer Masi; and (6) Aaron Shaw ("Shaw"). The defense did not present any witnesses.

1.    Monet Jensen

Jensen testified that on April 24, 2007, she was pushing her one (1) year old daughter in a stroller on Main Street in Hempstead, Nassau County, New York, when a "black male" with dreadlocks, wearing "a yellow T-shirt, black jeans and black and yellow sneakers," approached her and "snatched [the chain] off [her] neck." (T. 148-150, 154). Jensen testified that "[a]s he snatched the chain, I had pulled for it too, so it actually broke into two pieces." (*Id.* at 150-51). "After he noticed that he didn't have the whole chain, he came over and he rushed me actually and pushed me, and that's when I noticed, like, I couldn't see my baby around. . . . [T]hat's when I threw the other piece of the chain back at him so I could help my baby off the floor." (*Id.* at 151-52).

---

[2]    Testimony from the trial is summarized here only insofar as it is relevant to the petition. "T" refers to the trial transcript.

Jensen explained that some people who were inside the barbershop across the street came outside to help her. (*Id.* at 154). Some of those people ran after her assailant, who had fled, and two (2) others called 911. (*Id.* at 154-55). The first officer arrived at the scene within three (3) to five (5) minutes and Jensen provided him with a description of her assailant. (*Id.* at 155). Officer Masi also arrived at the scene and Jensen got in the back of his vehicle. (*Id.*). Officer Masi received a call that other officers were holding someone who matched Jensen's description of her assailant two (2) blocks away, and Officer Masi and Jensen traveled to that location. (*Id.* at 155-56). Jensen testified that she recognized the man being held on the ground by an officer, who had "dreads, [and wore the] same yellow T-shirt, black jeans and his black and yellow sneakers," and stated, "That's the man who robbed me and hurt my baby." (*Id.* at 156-57). Jensen testified that there was nothing obstructing her view during the identification, and "there was no doubt" in her mind that the he was "the person who grabbed [her] chain and knocked the stroller over." (*Id.* at 156-57). Jensen identified petitioner as the man she observed being held by officers. (*Id.* at 158).

## 2. Sergeant Francis McNamee

Sgt. McNamee testified that on April 24, 2007 at around 2:29 p.m., he received a radio transmission that a robbery had occurred about one (1) block from his current location. (*Id.* at 207-08). Sgt. McNamee arrived at the scene approximately thirty (30) seconds later and spoke with Jensen. (*Id.* at 208). Jensen explained to Sgt. McNamee that a black male with short dreadlocks, wearing a yellow shirt and black pants, "had come up to her and snatched her chain and knocked her baby over." (*Id.* at 209-10). At 2:31 p.n., Sgt. McNamee broadcasted Jensen's description of her assailant. (*Id.* at 208-10). Sgt. McNamee testified that Officer Masi arrived at the scene "almost immediately," and he instructed Officer Masi to place Jensen in his vehicle and "to do a quick canvas of the neighborhood." (*Id.* at 210).

4

At 2:35 p.m., while Sgt. McNamee was canvassing the area, he received a radio transmission indicating that other officers had stopped a suspect matching Jensen's description. (*Id.* at 211). Sgt. McNamee arrived at the scene and observed petitioner, who was handcuffed and standing with other officers. (*Id.* at 221-22). Petitioner was "wearing yellow T-shirt, black pants and he had short dreads. (*Id.* at 212). Sgt. McNamee testified that he arrived about thirty (30) seconds after the "show-up" was conducted, in which Officer Masi arrived with Jensen and she identified petitioner as her assailant. (*Id.* at 214, 221-22).

### 3.   Officer James Murphy

Officer Murphy testified that on April 24, 2007, at approximately 2:30 p.m., he began to canvass the area near 35 Main Street following a radio call about a robbery committed by a subject described as "[m]ale black, yellow T-shirt, black jeans and dreads." (*Id.* at 224-25). At 2:34 p.m., Officer Murphy observed a subject matching that description who started running after he saw Officer Murphy's marked police car. (*Id.* at 225-27). Officer Murphy stopped and got out of his vehicle, and shouted "[p]olice, stop," but the subject continued running. (*Id.* at 227-28). At 2:35 p.m., Officer Murphy, who was joined by Officer Kirichenko while running after the subject, caught up to and grabbed the subject and he went to the ground. (*Id.*). Officer Murphy handcuffed the subject, stood him up, and notified other officers "that we had a subject stopped." (*Id.* at 228-29, 234-35). Officer Murphy testified that when Officer Masi arrived at the scene with Jensen thirty (30) seconds later for the show-up identification, Officer Murphy was standing next to the subject. (*Id.* at 229-30). Officer Murphy identified that subject as petitioner. (*Id.* at 231).

### 4.   Officer Mark Kirichenko

Officer Kirichenko testified that on April 24, 2007, he was dispatched to investigate a robbery that occurred at 35 Main Street, and from his vehicle, he "observed Officer Murphy

5

following a suspect on foot." (*Id.* at 243-44). Officer Kirichenko "exited [his] vehicle and continued to run after the suspect as well." (*Id.* at 244). Officer Kirichenko testified that he and Officer Murphy caught up to the suspect, who was wearing a yellow t-shirt, black pants and black and yellow sneakers, and placed him in handcuffs. (*Id.* at 244-45). Officer Kirichenko further testified that when Officer Masi and Jensen arrived for the show-up identification thirty (30) seconds later, petitioner was standing. (*Id.* at 245-47).

### 5. Officer Americo Masi

Officer Masi testified that on April 24, 2007, at approximately 2:30 p.m., he "responded lights and sirens" to 32 Main Street, Hempstead, following a radio transmission for a robbery. (*Id.* at 256-57). Officer Masi observed Jensen "clutching her baby." (*Id.* at 256-57). Jensen informed Officer Masi that "[a] young man stole her necklace," and when "[s]he tried to retrieve it, [ ] he snatched it back from her and in the process of doing that, kicked over the baby stroller, causing injury to the child." (*Id.* at 257). Officer Masi placed Jensen and her daughter in the back of his vehicle and put the stroller in the trunk. (*Id.* at 258). He also placed a backpack given to him by Officer NcNamee, who had just received it from Aaron Shaw, in the trunk of the car. (*Id.* at 306, 313-15). At approximately 2:32 p.m., Officer Masi and Jensen began to canvass the area for a black male wearing a yellow shirt and black pants. (*Id.* at 258-60). As Officer Masi and Jensen were driving and canvassing, Jensen further described that her assailant had short dreads and was wearing yellow and black sneakers. (*Id.* at 259-60). After canvassing the area for about three (3) minutes, Officer Masi received a radio transmission that a subject matching the description had been stopped. (*Id.* at 261-62).

Officer Masi testified that at 2:36 p.m., he drove Jensen to the location where the subject was stopped to conduct a show-up identification, without instructing her in any way. (*Id.* at 263). As Officer Masi arrived, Jensen became "[v]ery excited" and began "[p]ointing, [and]

6

banging on [the] plastic partition which separates the passenger compartment in the back" from the front of the police car. (*Id.* at 263). Officer Masi observed petitioner standing with Officer Murphy and Officer Mirichenko. (*Id.* at 263-64, 273).

Officer Masi also testified that when he returned to police headquarters later that day, he examined the contents of the backpack that was turned over by Shaw to Sgt. McNamee. (*Id.* at 306-07, 314-15). The backpack contained medical documentation from Nassau County Medical Center bearing the name "Rahsheem Moss."[4] (*Id.* at 307). The backpack was not treated as evidence, but instead, was treated as the petitioner's personal property which was added to the "property receipt" and later returned to petitioner. (*Id.* at 308-09).

### 6. Aaron Shaw

Shaw testified that on April 24, 2007, at approximately 2:25 p.m., he was standing in front of the Hall of Fame barbershop on Main Street with his barber and some other men, when he observed a man wearing a yellow shirt and blue jeans approach a woman who was pushing a stroller up the street. (*Id.* at 284-85). Shaw testified that "it sounded like they [were] arguing" and he saw a "tussle" between them, in which the man pushed the woman towards a parked car, and she hit the car and started yelling. (*Id.* at 284, 294). Shaw observed the man "reach his arm out and go towards the female's neck," "gestured his arm," "nudging" and "knocking the baby stroller over and knocking the baby down to the ground." (*Id.* at 284). Shaw testified that he saw "the gentlemen snatch what I believed to be the female's chain off of her neck and started walking away." (*Id.* at 284).

Shaw testified that, at that point, he and three (3) or four (4) others started running across the street, and the perpetrator "took off running" "when he noticed that we was coming across

---

[4]     The parties stipulated to this fact. (T. 313-14).

the street." (*Id.* at 284). Shaw and the others chased after him, and as Shaw got closer, the perpetrator dropped a large book bag he had been carrying. (*Id.* at 285). Shaw "grabbed the book bag," "opened the book bag and there was some dirty clothes," and "handed the book bag over to the officer." (*Id.* at 285-86).

Shaw testified that he went searching for the perpetrator, spotted him, started pointing, and said "that's him, over there" to an officer who was pulling up on Shaw's left side. (*Id.*). Shaw then approached the perpetrator. (*Id.* at 287). When Shaw arrived, "three or four officers already had apprehended the guy and had him on the ground." (*Id.*). While Jensen "was still up the block where everything first took place," Shaw told the officer, "That's him there, Officer." (*Id.* at 288-303). Shaw testified that there was "no doubt in my mind" that petitioner was the same person who had robbed Jensen. (*Id.* at 289).

C.      Verdict and Sentence

On January 31, 2008, petitioner was convicted after a four (4) day jury trial of robbery in the second degree (N.Y. Penal Law § 160.10(2)(a)) and robbery in the third degree (N.Y. Penal Law § 160.05). (Hershey Aff. ¶ 7). On March 14, 2008, petitioner was sentenced, as a second felony offender, to a determinate term of imprisonment of ten (10) years to be followed by five (5) years of supervised release for the second degree robbery charge. (*Id.*) Petitioner was also sentenced to a concurrent, indeterminate prison term of three and one-half (3 ½) to seven (7) years for the third degree robbery charge. (*Id.*)

D.      Post-Trial Procedural Background

1.      Direct Appeal to Appellate Division

On February 10, 2009, petitioner appealed ("Direct Appeal") the judgment of conviction to the Appellate Division, Second Department ("Appellate Division") on the following grounds:

8

(1) Jensen's in-court identification should have been suppressed because it was based on an unduly suggestive show-up procedure; and (2) the jury's verdict was against the weight of the evidence. (Hershey Aff. ¶ 8; Petitioner's Appellate Division Brief [Docket Entry No. 9-6]).

On November 24, 2009, the Appellate Division affirmed petitioner's judgment of conviction. *People v. Moss*, 67 A.D.3d 1027, 889 N.Y.S.2d 642 (2d Dep't 2009). With respect to petitioner's contention that Jensen's in-court identification should have been suppressed, the Appellate Division held that because petitioner "relie[d] on portions of the trial record" and "did not seek to reopen the hearing based on the trial testimony, or move for a mistrial, the question of whether the trial testimony undermined the hearing court's determination with respect to the showup identification procedure is not properly before this Court." *Id.* at 1027-28, 889 N.Y.S.2d at 642 (citations omitted). The Appellate Division stated "[i]n any event, the defendant's contention in this regard is without merit." *Id.* at 1028, 889 N.Y.S.2d at 642 (citations omitted). As to petitioner's claim regarding the weight of the evidence, the Appellate Division conducted an independent review, and held "that the verdict of guilt was not against the weight of the evidence." *Id.* (citations omitted).

2. Application for Leave to Appeal

On March 24, 2010, petitioner's appellate counsel, Martha R. Hochberger, filed an application for leave to appeal to the Court of Appeals of New York ("Court of Appeals"), renewing both claims raised in petitioner's Direct Appeal to the Appellate Division ("Hochberger Application for Leave to Appeal"). (Hershey Aff. ¶ 9; Hochberger Application for Leave to Appeal [Docket Entry No. 9-15]). On June 11, 2010, the Court of Appeals denied the Hochberger Application for Leave to Appeal. *People v. Moss*, 15 N.Y.3d 754, 933 N.E.2d 226, 906 N.Y.S.2d 827 (2010).

3.      Application for Reconsideration of Denial of Leave to Appeal

On June 20, 2010, petitioner submitted a *pro se* application for reconsideration of the

Court of Appeal's June 11, 2010 denial of the Hochberger Application for Leave to Appeal the

Appellate Division's affirmation of the judgment of conviction ("Pro Se Application for

Reconsideration"). (Hershey Aff. ¶ 9; Pro Se Application for Reconsideration [Docket Entry No.

9-19]). The Pro Se Application for Reconsideration consist of one (1) paragraph and does not

clearly advance any grounds for relief.[3] (Pro Se Application for Reconsideration).

On July 20, 2010, after the March 24, 2010 Hocherberger Application for Leave to

Appeal was denied by the Court of Appeals, petitioner submitted a *pro se* application for leave to

appeal ("Pro Se Application for Leave to Appeal"), in which he reiterated the same claims

advanced by his appellate counsel in the Hochberger Application for Leave to Appeal, as well as

the following three (3) additional claims: (1) ineffective assistance of appellate counsel for "[n]ot

allowing defendant to raise any other points except two that attorney said could be presented at

that court and afterwards sending defendant a letter stating that those points were both out of the

jurisdiction of that court;"[4] (2) ineffective assistance of trial counsel for failure to obtain an

independent psychiatric evaluation of petitioner; and (3) certain evidence admitted at trial –

---

[3]      In his Pro Se Application for Reconsideration, petitioner stated, "[c]onsidering the attorney already closing their assigned case before I had an opportunity to exercise my rights of appeal, and me proceeding with the appeal pro se, I am asking that I be given a chance to be able to resubmit this application to appeal properly." (Pro Se Application for Reconsideration, at 1).

[4]      Respondent interprets this claim to allege that petitioner's appellate "counsel failed to properly argue that the jury's verdict was against the weight of the evidence and that the identification procedure was unduly suggestive and tainted by improper police conduct." (Opp. to Petitioner's July 20, 2010 Pro Se Application, at 2 [Docket Entry No. 9-20]). However, in his Pro Se Application for Leave to Appeal, petitioner described those claims as "[t]he two points presented by the appellate division attorney that weren't considered to be reviewed at the appellate division." (Pro Se Application for Leave to Appeal, at 2 [Docket Entry No. 9-17]). Accordingly, this Court concludes that petitioner's claim regarding appellate counsel in the Pro Se Application for Leave to Appeal asserts that appellate counsel was ineffective for failing to raise *additional* grounds besides the two (2) claims raised by appellate counsel regarding the identification procedure and the weight of the evidence.

items from petitioner's book bag – were obtained in violation of the Fourth Amendment. (Pro Se Application for Leave to Appeal [Docket Entry No. 9-17]).

On September 1, 2010, the Court of Appeals denied petitioner's motion for reconsideration. *People v. Moss*, 15 N.Y.3d 854, 935 N.E.2d 823, 909 N.Y.S.2d 31 (2010) (Table).[5] Petitioner did not petition the United States Supreme Court for a writ of certiorari. (Pet. ¶ 9(h); Hershey Aff. ¶ 9).

### 4. 440.10 Motion to Vacate Judgment of Conviction

On April 29, 2010, petitioner filed a motion in the Supreme Court, Nassau County, seeking to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law (the "440.10 Motion"),[6] on the following grounds: (1) Jensen's in-court identification should have been suppressed because it was based on an unduly suggestive show-up procedure; (2) the jury's verdict was against the weight of the evidence; and (3) ineffective assistance of trial counsel for failure to obtain an independent psychiatric evaluation. (Petitioner's Motion to Vacate, at 3-7 [Docket Entry No. 9-22]). On October 21, 2010, the

---

[5]    The certificate issued by the Court of Appeals is labeled "Certificate Denying Application for Reconsideration." [Docket Entry No. 9-21]. It does not indicate whether the Court of Appeals considered and denied both the Pro Se Application for Reconsideration and the Pro Se Application for Leave to Appeal, which raised three (3) claims for the first time. Respondent's submission highlights this uncertainty. Respondent has identified exhibit 20 to its responsive pleading as "Respondent's Opposition to Petitioner's Application for Reconsideration of His Leave Letter to NY Court of Appeals." However, exhibit 20 is a letter submitted by respondent on August 12, 2010, "in opposition to defendant's pro se application, dated July 20, 2010, for leave to appeal to the Court of Appeals from an order of the Appellate Division, Second Department, dated November 24, 2009." [Docket Entry No. 9-20]. Exhibit 20 addresses the claims raised by petitioner in the Pro Se Application for Leave to Appeal dated July 20, 2010, and not the Pro Se Application for Reconsideration dated June 20, 2010, which contains only one (1) paragraph. Furthermore, respondent asserts in its memorandum of law in opposition to the Petition ("Opp.") that petitioner raised his Fourth Amendment claim for the first time in his "pro se motion for reconsideration of his leave letter to the Court of Appeals." (Opp. at 19; *see also* Hershey Aff. ¶ 9). For purposes of this opinion, the Court assumes that the Court of Appeal's certificate issued on September 1, 2010 denied both the Pro Se Application for Reconsideration and the Pro Se Application for Leave to Appeal.

[6]    Petitioner's 440.10 Motion was still pending when the Court of Appeals issued the September 1, 2010 certificate.

11

Honorable Alan L. Honorof denied petitioner's 440.10 Motion in its entirety. *People v. Moss*, Ind. No. 2033N-07, Motion No. C-392 (Oct. 21, 2010) (Honorof, J.) [Docket Entry No. 9-24]. Judge Honorof denied petitioner's claims regarding the t identification procedure and the weight of the evidence because these same claims "have previously been denied on the merits on direct appeal." *Id*. Judge Honorof denied petitioner's ineffective assistance of trial counsel claim because petitioner "failed to provide sworn allegations of fact to support his claims." *Id*.

On November 17, 2010, petitioner was served with a copy of the order denying his 440.10 Motion. (Notice of Entry [Docket Entry No. 9-24]). Petitioner did not seek leave to appeal the denial of his 440.10 Motion to the Appellate Division. (Hershey Aff. ¶ 10).

   5.   Petition for Relief Pursuant to 28 U.S.C. § 2254

On December 10, 2010, petitioner filed the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, based on the following grounds: (1) ineffective assistance of trial counsel for failure to obtain an independent psychiatric evaluation ("Ineffective Assistance of Trial Counsel Claim"); (2) the jury verdict was against the weight of the evidence ("Weight of Evidence Claim"); (3) Jensen's in-court identification should have been suppressed because it was based on an unduly suggestive show-up procedure ("Identification Claim"); (4) certain evidence admitted at trial – items from petitioner's book bag – were obtained in violation of the Fourth Amendment ("Fourth Amendment Claim"); and (5) ineffective assistance of appellate counsel for failure to raise additional grounds on appeal ("Ineffective Assistance of Appellate Counsel Claim").[7] [Docket Entry No. 1]. Petitioner also requests that the Court appoint *pro*

---

[7]     Petitioner reiterates the ineffective assistance of appellate counsel claim that he raised for the first time in his Pro Se Application for Leave to Appeal dated July 20, 2010. As discussed *supra*, the Court interprets petitioner's claim to assert that appellate counsel was ineffective for failing to raise *additional* grounds besides the two (2) claims raised by appellate counsel regarding the identification procedure and the weight of the evidence.

*bono* counsel to assist him in this proceeding. On May 3, 2011, the District Attorney of Nassau County, as attorney for respondent, filed a response to the petition. [Docket Entry No. 9].

III.    Discussion

      A.    Appointment of Counsel

"[T]here is no constitutional right to representation by counsel in habeas corpus proceedings." *United States v. Yousef*, 395 F.3d 76, 77 (2d Cir. 2005) (per curiam) (internal quotations marks and citation omitted); *see also Wright v. West*, 505 U.S. 277, 293, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (recognizing that the Constitution does not guarantee the right to counsel on habeas review). Appointment of counsel in habeas corpus proceedings is governed by 18 U.S.C. § 3006A(a)(2)(B), which provides in relevant part that whenever the district court "determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2254 . . . of title 28." 18 U.S.C. § 3006A(a)(2)(B). Although Rules 6(a) and 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts provide that an attorney must be appointed for a petitioner who otherwise qualifies to have counsel appointed under § 3006A "[i]f necessary for effective discovery," and "[i]f an evidentiary hearing is warranted," respectively, the appointment of counsel at any other stage of a habeas corpus proceeding is discretionary. *See Villafane v. Artus*, No. CV-09-5545, 2011 WL 6835029, *27 (E.D.N.Y. Nov. 17, 2011); *Cordova–Diaz v. Brown*, No. 10 Civ. 5133, 2011 WL 3665377, at *1 (S.D.N.Y. Aug. 15, 2011).

A request for the appointment of counsel in a habeas corpus proceeding is analyzed in the same manner as any other application for the appointment of counsel in civil cases pursuant to 28 U.S.C. § 1915(e)(1). *See Razzoli v. U.S. Parole Comm'n*, No. 10–CV–1842, 2010 WL 5027548, at *2 (E.D.N.Y. Dec. 2, 2010); *Tarafa v. Artus*, No. 10 Civ. 3870, 2010 WL 2545769, at *1

13

(S.D.N.Y. Nov. 17, 2011). When deciding whether to assign counsel to an indigent civil litigant under 28 U.S.C. § 1915(e)(1), the threshold inquiry is whether there is "'some likelihood of merit'" to the litigant's position. *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)); *see also Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68-69 (2d Cir. 2011) (holding that a motion for appointment of counsel is properly denied if the litigant's "chances of success are highly dubious"); *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) (holding that "the district judge should first determine whether the indigent's position seems likely to be of substance"). "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

If the Court finds that the applicant's claim is of substance, it should next consider the following factors: "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61–62; *see also Carmona*, 243 F.3d at 632 ("Only after an initial finding that a claim is likely one of substance" should the court "consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute."). However, those factors are not restrictive and "[e]ach case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

The appointment of counsel is not warranted in this case since, *inter alia*: (1) petitioner's claims are without merit; (2) the legal issues presented in this proceeding are not particularly complex; and (3) there is no special reason to appoint counsel. Accordingly, petitioner's request for the appointment of counsel is denied.

B.     Exhaustion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs applications of incarcerated state court defendants seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); *see also Cullen v. Pinholster*, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); *Jones v. Murphy*, 694 F.3d 225, 246-47 (2d Cir. 2012) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review."), *cert. denied*, 133 S. Ct. 1247, 185 L. Ed. 2d 192 (Feb. 19, 2013). "'Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights,'" *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (internal quotation marks and citation omitted), *i.e.*, the "petitioner must 'present[ ] his [or her] claim to the highest court of the state." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (alterations in original) (quoting *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

Petitioner's Weight of the Evidence Claim and Identification Claim were raised in petitioner's Direct Appeal to the Appellate Division and in the Hochberger Application for

Leave to Appeal to the Court of Appeals filed by appellate counsel. Therefore, the Weight of the Evidence Claim and the Tainted Evidence Claim have been properly exhausted.

Petitioner first asserted the Ineffective Assistance of Trial Counsel Claim and the Fourth Amendment Claim in his Pro Se Application for Leave to Appeal to the Court of Appeals, dated July 20, 2010. "However, raising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004). Though petitioner also raised the Ineffective Assistance of Trial Counsel Claim and the Fourth Amendment Claim in his collateral 440.10 Motion, petitioner did not seek leave to appeal the denial of his 440.10 Motion.[8] Accordingly, petitioner did not exhaust his Ineffective Assistance of Trial Counsel Claim or his Fourth Amendment Claim.

While petitioner first raised the Ineffective Assistance of Appellate Counsel Claim in his Pro Se Application for Leave to Appeal, petitioner has not initiated a *coram nobis* proceeding in state court to assert that claim. *See Beuther v. Lefevre*, No. 88 C 2397, 1989 WL 18726, at *1 (E.D.N.Y. Feb. 15, 1989) ("[T]he proper vehicle for raising [an ineffective assistance of appellate counsel] claim before the state courts is a writ of error *coram nobis* to the Appellate Division.") (citing *People v. Bachert*, 69 N.Y.2d 593, 596, 516 N.Y.S.2d 623, 624 (1987)). Under New York law, there is no time limit for an application for a writ of error coram nobis. *Id.* at *2; *see also Cameron v. New York*, No. 01 Civ. 9988, 2002 WL 31898076, at *9 (S.D.N.Y. Dec. 30, 2002). Therefore, since petitioner may still initiate a *coram nobis* proceeding, petitioner

---

[8]     On November 17, 2010, petitioner was served with the October 21, 2010 order denying his 440.10 Motion. (Notice of Entry [Docket Entry No. 9-24]). The thirty (30) day period within which petitioner was permitted to appeal the order has lapsed. *See* N.Y. Crim. Proc. Law § 460.10(4)(a) (leave to appeal must be sought within thirty (30) days after service of the order sought to be appealed).

16

has "failed to exhaust the remedies available in the courts of the state" with respect to his Ineffective Assistance of Appellate Counsel Claim. *Beuther*, 1989 WL 18726, at *2.

     C.     Procedural Default

     1.     No Available State Remedy

To the extent that no state remedies remain "available" to petitioner with respect to his Ineffective Assistance of Trial Counsel Claim and Fourth Amendment Claim, he has met "the technical requirements for exhaustion." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also St. Helen*, 374 F.3d at 183 ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."). "When a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman*, 501 U.S. at 735 n.1).

Petitioner may still initiate a *coram nobis* proceeding, and thus, state remedies remain "available" to petitioner with regard to his Ineffective Assistance of Appellate Counsel Claim.[9] Therefore, this claim is not deemed exhausted nor is it procedurally defaulted. Accordingly, because the Court may not reach the merits of this unexhausted claim, the Ineffective of Assistance of Appellate Counsel Claim is dismissed. *See Beuther*, 1989 WL 18726, at *2

---

[9]     The Court's conclusion is not dependent on the claims underlying petitioner's Ineffective Assistance of Appellate Counsel Claim and applies equally to respondent's interpretation of petitioner's claim. *See supra* n.4.

(dismissing ineffective assistance of appellate counsel claim as unexhausted because petitioner could still bring a writ of error *coram nobis*).

Unlike his Ineffective Assistance of Appellate Counsel Claim, petitioner has procedurally defaulted on his Ineffective Assistance of Trial Counsel Claim and his Fourth Amendment Claim because New York's procedural rules now bar him from raising these claims in New York courts. Petitioner failed to raise these claims in his Direct Appeal to the Appellate Division. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring review if claim could have been raised in state court); *St. Helen*, 374 F.3d at 183 ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court.") (citation omitted); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.") (citation omitted). Furthermore, these claims were raised by petitioner in his subsequent Pro Se Application for Leave to Appeal, which was denied by the Court of Appeals. *See St. Helen*, 374 F.3d at 183 ("Further direct review by the Court of Appeals is no longer available.") (citation omitted); *Aparicio*, 269 F.3d at 91 ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago.") (citations omitted). Petitioner is further foreclosed from asserting his Ineffective Assistance of Trial Counsel Claim because he failed to seek leave to appeal the denial of his 440.10 Motion, in which that claim was raised. *See, e.g.*, N.Y. Crim. Proc. Law § 460.10(4)(a) (leave to appeal must be sought within thirty (30) days after service of the order sought to be appealed). Accordingly, although petitioner's Ineffective Assistance of Trial Counsel Claim and Fourth Amendment Claim are technically exhausted, they are procedurally defaulted.

## 2. Failure to Comply With State Procedural Rule

Under the doctrine of procedural default, "a federal court may not review the merits of claims . . . that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.*; *see also Maples v. Thomas*, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (holding that a federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state procedural ground); *Coleman*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").

Petitioner's Identification Claim is procedurally defaulted because the Appellate Division decided the claim on a procedural ground, and not on the merits. Specifically, the Appellate Division held that the "the question of whether the trial testimony undermined the hearing court's determination with respect to the showup identification is *not properly before this Court*" because petitioner "relie[d] on portions of the trial record" and "did not seek to reopen the hearing based on the trial testimony, or move for a mistrial." *People v. Moss*, 67 A.D.3d 1027, 1027-28, 889 N.Y.S.2d 642, 642 (2d Dep't 2009) (emphasis added). The Appellate Division's ruling that, "[i]n any event, the defendant's contention in this regard is without merit," *Id.* at 1028, 889 N.Y.S.2d at 642 (citations omitted), does not preserve this claim for federal habeas review. *See Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (federal habeas review barred

where state court dismissed claims on procedural ground, but alternatively ruled that, "in any event," petitioner's claims were without merit); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *Smith v. Herbert*, 275 F. Supp. 2d 361, 366 (E.D.N.Y. 2003) ("When a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.") (internal quotation marks and citation omitted); *Torres v. Ercole*, No. 08-CV-0414, 2012 WL 911871, at *3 (E.D.N.Y. Mar. 16, 2012) ("[F]ederal habeas review is foreclosed where a state court has relied on an independent and adequate state procedural ground, even where the state court has also ruled in the alternative on the merits of the federal claim.") (internal quotation marks and citation omitted).

### 3. Cause and Prejudice

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted); *see also Maples*, 132 S. Ct. at 921, 181 L.Ed.2d 807 ("The bar to federal review [of a procedurally defaulted claim] may be lifted, however, if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law.") (quoting *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546); *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

Petitioner offers no explanation regarding his failure to raise the Ineffective Assistance of Trial Counsel Claim or the Fourth Amendment Claim in his Direct Appeal to the Appellate Division. Nor has petitioner addressed why he did not appeal the denial of his 440.10 Motion. Petitioner has not attempted to establish cause for the procedural default of his Identification Claim. Nor has petitioner demonstrated that he will suffer prejudice or that there will be a fundamental miscarriage of justice if the Court does not consider his procedurally defaulted claims. Furthermore, there is no evidence to show, nor does petitioner claim, that he is actually innocent of the crimes of which he was convicted. Accordingly, petitioner's Ineffective Assistance of Trial Counsel Claim, Fourth Amendment Claim, and Identification Claim are dismissed as procedurally defaulted.

D.      State Law Claims

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, *see* 28 U.S.C. 2254(a), and "does not lie for errors of state law." *Swarthout v. Cooke*, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011); *Wilson v. Corcoran*, 131 S.Ct. 13, 16, 178 L.Ed.2d 276 (2010) (accord). "[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. May 24, 2011) (citations omitted), *cert. denied*, 132 S.Ct. 1151, 181 L.Ed.2d 1024 (2012); *see also White v. Rock*, No. CV-10-5163, 2013 WL 1767784, at *24 (E.D.N.Y. Apr. 22, 2013) ("Any contention that the verdict was against the weight of the evidence presents a claim under state law that is not

cognizable on federal habeas review.") (citations omitted); *Villafane v. Artus*, No. CV-09-5545, 2011 WL 6835029, at *50 (E.D.N.Y. Nov. 17, 2011) ("To the extent petitioner claims that the verdict was against the weight of the evidence, that claim does not present a claim cognizable on federal habeas review.") (citations omitted); *Williams v. Ercole*, No. CV-09-0363, 2011 WL 4944268, at *9 (E.D.N.Y. Oct. 12, 2011) (same). Accordingly, petitioner's Weight of the Evidence Claim is dismissed.

IV.     Conclusion

For the foregoing reasons, the Petition is denied. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008). Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment in favor of respondent, close this case, and serve notice of entry of this order on all parties in accordance with Federal Rule of Civil Procedure 77(d)(1), including mailing a copy of the order to petitioner at his last known address.

**SO ORDERED**.

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated:  February 12, 2014
        Central Islip, New York